**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.  19-184 (TNM) |
| | : | |
| v. | : | |
| | : | |
| **MARCUS FENWICK,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by its undersigned counsel, hereby files its Memorandum in Aid of Sentencing in this matter. For the reasons set forth below, and in accordance with the plea agreement in this case, the government asks the Court to sentence the defendant between the low-end and mid-range of the applicable Sentencing Guidelines range.

**I.      SENTENCING CONSIDERATIONS**

In sentencing a defendant, after calculating the appropriate Guidelines range, the Court must consider the factors set forth in 18 U.S.C. § 3553. *See Gall v. United States*, 552 U.S. 38, 50 (2007). The following factors keep with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Under the Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. § 3553(a)(6).

## II.     ARGUMENT

### A.  Defendant's Criminal Conduct

<u>The Offense Conduct to Which the Defendant has Pleaded Guilty</u>

As reflected in paragraphs 6 through 8 of the June 2, 2020 Presentence Investigation Report (PSR), ECF Document 21, on or about April 22, 2016, defendant Fenwick was convicted in the United States District Court for the District of Columbia of Conspiracy to Distribute and Possess with the Intent to Distribute 100 Grams or More of Phencyclidine, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(B)(iv), and was sentenced to 60 months incarceration followed by 5 years of supervised release.  As part of the defendant's sentence, he was allowed to complete the final portion of his sentence at the Residential Reentry Center in Washington, D.C. (Hope Village, Inc., 2840 Langston Place, S.E., Washington, D.C.).

On January 17, 2019, the defendant was approved by, the Bureau of Prisons to be furloughed to Hope Village to serve the remainder of his sentence.  On May 12, 2019, at approximately 6 p.m., while the defendant was serving the reminder of his sentence of incarceration at Hope Village, the defendant was observed by staff members coming from an unauthorized area of the facility and was asked to empty his pockets.  In doing so, the defendant removed a zip lock bag containing a green leafy substance and placed it on a desk.  A staff member seized the zip lock bag and placed it on the desk, but the defendant grabbed the bag and stated he was leaving.  The defendant then walked out of Hope Village and proceeded to walk away from the facility without authorization. The defendant remained on escape status until December 17, 2019, when he surrendered to the U.S. Marshal Service.

On or about May 31, 2019, a federal grand jury indicted the defendant on one count of Escape.

The defendant acknowledged that he was aware that on May 12, 2019, he was required to serve the remainder of his sentence at Hope Village, and that he absconded knowingly and on purpose, and not by accident or mistake.

### B. Nature of the Offense and the Defendant's Criminal History

The defendant's conduct in this case is concerning given his history of illegal activity. These crimes include two firearms offenses, and a federal drug trafficking conspiracy case in which involved a large quantity of PCP, one of the most dangerous drugs distributed in this jurisdiction. When given the opportunity to reform through probation, residential treatment facilities, and the option to complete his sentence at a halfway house, the defendant has shown a disregard for the law, a lack of appreciation for the leniency afforded by the courts, and a lack of appreciation for the severity of his offenses. The defendant appears to have committed his second firearms offense just days after he was sentenced for his first firearms offense. PSR at ¶¶ 22-23. He committed the federal drug (and gun) conspiracy case while he was committed or supervised in his second firearms case. PSR at ¶¶ 23-24. Finally, he escaped from custody in the federal drug case, which resulted in the instant escape case. Defendant's criminal history shows a continuous connection with the criminal justice system.

The courts' previous decisions to grant the defendant probation and other rehabilitation sentences have proven ineffective in deterring Mr. Fenwick from continuing to commit crimes, including with firearms. Unfortunately, any lenient sentences in the defendant's criminal past has been received without appreciation and have been subsequently abused, including when he escaped from the halfway house. However, we do see some recent promise by defendant's return

to court after he was mistakenly released by the D.C. Jail in this case in January 2020 and by his failure to be rearrested while on HISP since then.

    **C. Punishment and Deterrence**

The government believes that a sentence within the applicable Guidelines range would be appropriate. This will protect the community and will further deter the defendant and others from criminal behavior, particularly attempts to escape sentences imposed by the courts.

In conclusion, the defendant's criminal history speaks for itself. Mr. Fenwick has spent a significant portion of his life committing crimes and violating the terms of his probation/release when not incarcerated. Even when his freedom is restricted or monitored, he commits crimes. His present conviction for Escape only further displays the defendant's lack of respect for the law. But again, we do recognize his apparent good behavior over the last nine months. Only time will tell whether this an aberration or a welcomed change in the defendant's life.

WHEREFORE, for the foregoing reasons and for any reasons that may be raised at the hearing in this matter, the government asks that the Court sentence the defendant between the low-end and mid-range of the applicable guidelines range.[1]

---

[1] We note that the PSR does not assess any criminal history points for defendant's 2012 firearms conviction. In that case, the defendant was "committed" for a period not to exceed two years and, as part of that sentence received residential placement for some period at Woodward Academy. PSR at ¶ 23. Probation has determined that defendant's 2-year commitment that included residential placement at Woodward Academy did not amount to "confinement" under § 4A1.2(d)(2)(A) or to a "sentence of imprisonment," or "sentence of incarceration" pursuant to § 4A1.2(b). See PSR addendum, ECF Doc. 21 at p. 21. Apparently, Probation has reached this conclusion merely because Woodward Academy is a treatment facility. The government does not believe that this conclusion is obvious. *See United States v. Stewart,* 643 F.3d 259, 263-264 (8th Cir. 2011) (a juvenile sentence served at a training school qualifies as a sentence of confinement if the juvenile was physically confined and not free to leave at will); *United States v. Chavez,* 476 Fed.Appx. 786, 788-790 (5th Cir. 2012) (in determining whether a prior "boot camp" sentence was a sentence of incarceration, "the dispositive factor was whether the defendant was physically confined while serving his prior sentence"*); see also United States v. Rasco*, 963 F.2d 132, 134-137 (6th Cir. 1992).

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
for the District of Columbia
N.Y. State Bar No. 444188

By:

_____/s/_____
GEORGE ELIOPOULOS
D.C. Bar No. 390601
Assistant United States Attorneys
Violent Crime and Narcotics
Trafficking Section
555 4th Street, NW, Room 4205
Washington, DC 20530
(202) 252-6957
george.p.eliopoulos@usdoj.gov